December 24, 2943, Tabor v. United States Mr. Callahan Good morning, Your Honors. I'm Attorney Eric Callahan from the law firm of Sussman Shapiro in New London, Connecticut, representing the plaintiffs' appellants Nancy and Walter Tabor. To narrow the issues on appeal, this case, or this appeal, arises out of cross motions for summary judgment. We are appealing the court's denial of plaintiff's motion and the granting of defendant's motion as to count six of the complaint, which is a federal quiet title action. Plaintiff also brought a state quiet title claim, which is count seven of the complaint. Because the federal claims were dismissed and count six was disposed of on summary judgment, the district court declined to exercise its supplemental jurisdiction as to count seven. We would submit that if the court reverses the district court on count six, it should also enter judgment in favor of count seven in favor of the plaintiffs as well. As to the other counts that were dismissed by the district court, the plaintiff is not challenging that dismissal order in this appeal. There are no genuine issues of fact. The district court accurately recited the facts within its decision. Plaintiff agrees with the court's finding that the subject easement is unambiguous, and therefore its role was confined to ascertaining the party's intent and interpreting the easement based on the plain language contained within the four corners of the document. Since the plain language unambiguously defines the property to include all three parcels, what is your textual argument for how the subdivision, division, or partition language could be read to mean within the parcels as opposed to the whole property? Oh, thank you, Your Honor. The plaintiffs own farmland, about 150 acres. So I would think that your answer to my question would start with the text. Yes. Well, our position, Your Honor, is that the way the easement was structured is it clearly defines three distinct easement areas that were collectively defined as the property. But the intent clearly displays that those parcels- So you're making an intent argument based on an ambiguity in the text? No, it's not an ambiguity. So what in the text, in the language about partition, division, or subdivision of the property allows us to reach the textual, the plain meaning argument that you're making? The three easement areas, A, B, and C, are defined within the document. The document displays they're non-contiguous, that the party's intended, through the expressed language of the document, that they would be separate. There's a right-of-way that separates B and C. Just to be more precise, I think, in answer to the question, your position would be that the property is already divided into three parts. And so, therefore, your client is not, in fact, dividing it. You're just recognizing pre-existing divisions. That's correct. So you wouldn't dispute that setting out new boundary lines or even selling off one piece to different owners would be a division. But as long as you maintain the integrity of the three parcels in themselves, you're saying there isn't a new division. Is that your position? Yes, Your Honor. So I understand that, and there's some appeal to that. But why should we understand these as existing divisions? So the contract defines the property as all three together, right? And as far as I can tell, the three parcels exist, like the recognition of three separate parcels exists nowhere but in the contract for the easement, right? Like, it's not as if, if I went to the county clerk, it would think that there was three separate parcels or three separate properties. From the perspective of, like, reality, or like, I don't know, apart from the easement contract, there's one unitary property. And so the government identified these three parcels just because that's where they wanted to have right of entry to, you know, adjust the grassland for the cattle and so on, right? There's a map that was recorded along with the easement, Your Honor, that was negotiated with the government. And it shows parcel A is 1,000 feet approximately from parcel B. And parcel B is separated by a right-of-way that leads to the plaintiff's other land from parcel C. And that right-of-way was known to be reserved by the plaintiff so they could develop their other land. So there is a map that was recorded on the land records. So you're saying that you wouldn't violate the contract as long as you didn't bifurcate the parcels themselves? That's correct. So you're saying if the Tabor's put up a big fence or, like, a barrier in that area that separates parcels B and C from parcel A, just like a big physical barrier, it wouldn't violate the contract? I didn't interpret the easement based on that question, Your Honor. But as long as it did not impact the conservation values that were negotiated with the government. But that would impact the conservation values, right? Because the way that the whole point of the contract is that the cattle can roam from parcel A to parcels B and C, right? There's a barn in parcel A and there's grassland, grazing land in parcels B and C, right? There's separation. So if there were a physical barrier in between them, it would actually undermine the whole point of the contract. To be candid with you, Your Honor, I don't know if there's a restriction on fencing. I'm interpreting the easement based on the issues in this case. Well, the easement incorporates by reference that whole report about what the point of the program was and what the conservation values are, right? I do get to, even if I'm just looking at the face of the contract, it's an exhibit to the contract, right? Those values haven't been impacted, Your Honor. The exhibit on the back of the contract by the express terms of the easement is the set of baseline as to what the condition of the property was when the easement was granted. That condition has not been impacted. So the government is still getting the same conservation values that negotiated. Well, I mean, and that's begging the question, right? If I understand the contract to allow for cattle to roam between these spaces, if you put up a physical barrier between them, it seems to me that's a division of the spaces because they can't roam that way. And so then isn't like a new ownership line sort of similar to a physical barrier? Well, it would allow leasing, Your Honor. So conceivably, you could lease A to one tenant, B to a different tenant, and C to a third tenant. They can all have different operations. The easement itself doesn't actually require cattle to be on the property. It permits it. So it's our position that the government's still receiving exactly what it bargained for. The boundaries of these easements have not been... Yeah, that's an interesting question. If you just stopped raising cattle, then maybe the government would no longer have an interest in it. But it's true. That doesn't seem to require that. Although it does seem to... There is a provision that says, you shouldn't engage in uses that are inconsistent with raising cattle or preserving grassland, right? Non-grassland land uses are prohibited. We are preserving the grassland. It's prohib... Any activity that is inconsistent with maintaining raising land is prohibited. So it does kind of seem to require a particular use of the property. It uses the word permit, and we are following the requirement to maintain the grasslands. Okay. Well, if there are no questions, thank you, Mr. Callahan. We'll hear from you again on rebuttal, but let's turn to the appellee, Ms. Milton. Good morning, Your Honors. I may have pleased the court. Michelle Milton on behalf of the United States. Judge Manasci, I'd like to address your question about the fence, but if I may first just get out my main point here, which is, as you pointed out, Judge Nathan, I think that the deed here is unambiguous. There was a single application, the table was submitted in 2011. There was a single application evaluation that the service conducted. There was a single appraisal for valuation purposes, and there was a single easement deed. And there is really, per the easement, a single property as defined in Article I in the recitals. So when you read Article III, Section T, in that context, the property may not be divided, partitioned, or subdivided. It's very clear that what is being referred to are the three parcels set forth in Appendix A. We think that the text is clear and that maybe this court need to go no further and confirm on that basis. I mean, the contract does envision the possibility of approved partitions, right? Yes. So if they wanted to partition or divide the property and got the government's approval, that would be allowed? That's correct. And then if that happened, they don't need a separate approval to convey it to a new owner. You just need to provide notice, right? I believe that is correct, although I don't believe... So if we were talking about, you know, let's say there was an approved division of the property into two different pieces. The contract says the entire contract applies to each piece, then you wouldn't need a separate approval to convey one of the pieces because there's just a notice requirement, right? So I'm struggling to answer your question only because that is not typically how... So the service has very stringent criteria for approving a division, and it essentially... Right, so maybe they wouldn't approve the division. I don't think the facts... But if they did, just the point I'm making is the division is a separate question from conveyance. Yes, that's correct. So then there's some force to Mr. Callahan's argument that if these divisions already existed, like if the way to understand the property is it's already three separate parcels, then by conveying one parcel, you're not creating a new division, you're just accepting the pre-existing divisions that existed. Well, it's not one separate... I mean, it's not... It was never three separate parcels. It was two fields, a field in the northeast and a field in the southwest. And you can see this really clearly in the supplemental appendix on page four. And the boundaries of the parcels were created specifically for this easement. So they really don't exist apart from this easement document. And I do want to go back and answer Jorana's question that you posed to my friend. Our position is that the T-Boards could erect a fence between parcels A and parcels B and C. You know, I think that if they were going to... There is, as again, supplemental appendix page four says, there are two rights of access to that, to parcels B and C. So you wouldn't necessarily need to drive the cattle through the property that way. And, you know, they do have a hundred... The only property encumbered here is 30 acres out of their entire... But you wouldn't have to drive the cattle that way. Why? Because they could go around the fence? Yeah, you could put them in a stock trailer and take them from these fields. Like just drive them from one place to another? You could drive them or you... I mean, I don't know the actual geography, but I'm assuming you could also sort of put them that way? I'm a little puzzled. So if you could erect a fence that created a physical barrier between the parcels and that would be okay, then why is the individual... The invisible barrier of like a property line, why would that be a division that would be unacceptable? Well, it is a violation... I would think a physical barrier would be more clearly a violation of the easement. Not if it's in common ownership, Your Honor. Common ownership is the important part here. And that's because these parts, it is to preserve in perpetuity the grassland purposes. And if you have different owners, that is less... The service's judgment over time... But the easement travels with the property, right? So even if there's a new owner, that that new owner would be subject to the easement, right? I do want to point out that we are far from the unambiguous terms of the deed. But just to answer Your Honor's question... Well, I don't know, because I can tell from the contract... That's in the contract, grassland purposes. And so if I want to understand what a division is under the contract, I can understand it in light of the other provisions of the contract, right? You could, although I think on its face, these terms are very clear. But the purpose of the division subdivision provision is to ensure that these will remain grasslands in perpetuity. And if you don't have both... That the reason the service wanted or accepted into the program all of these parcels is that a small... These are relatively small parcels. And if you do not keep them together, what you are... The only essential viable grassland uses is a hobby farm. And it is not likely for a hobby farm to be maintained in perpetuity. And so the most likely... Yeah, but the contract says division, right? It doesn't say common ownership, right? And so if you're telling me, well, if it's under common ownership, even if I create a physical barrier that separates them, that still is not a division? Then if there's different ownership, as long as the arrangement between the owners would allow, you know, access and grassland uses, why is that a division? I believe my understanding of that provision does refer to ownership. And I think that's supported by the use of the word partition. Partition is a legal term related to ownership. I mean, I just think that the common understanding of those terms is about the division of ownership, not necessarily about the physical division of the property. The rest of Article 3... Wait, is that right? I mean, if I look at that section... Very clear about what you can and cannot do... The section of permitted, prohibited, and restricted uses of which subdivision is subsection T, all of the provisions of that section are about physical things you can do with the property. It's about whether you could erect signs, you know, you could allow motorized vehicles, you could cut trees. So the title of that... Why wouldn't the natural understanding of that be... It's also about uses. I mean, the title of that article is permitted, prohibited, restricted, and reserved activities. And can, you know... Right, it's kind of weird to think that the underlying ownership of the land is an activity that's occurring on the land, right? Your Honor, I do not believe that it is, as in... To the extent that you would like to read ambiguity into this, and I don't think that there is any, I believe that the ambiguity would have to be construed in favor of the United States per Article VI, Section G, which says as much. The Taybors suggest, in passing, in their reply, that this is a contract of adhesion, that that provision would be unenforceable. I don't think that's right, to the extent Your Honors disagree. I want to point out, my friend on the other side said that there are no disputed facts. That's actually not true. If the contract is unambiguous, and I think probably you would need to send this back down for a trial, a bench trial, under the Quiet Title Act, to take parole evidence. We don't think that that's necessary. We think that the deed itself is unambiguous, as we set forth in the brief. We think that if it is ambiguous, it needs to be construed in the way that we... Okay, I understand that, because I want to go back to the other point you were making. So, if you're saying that a physical barrier that separated, or that divided, you know, Parcels B and C from Parcel A would not be a violation of the easement, why is it that the ownership line would be a violation? Because that would be a violation of Article III, Subsection T. Yeah, no, because you're saying that would be a division. But I guess my question is, if the physical barrier is not a division, why would the ownership barrier be a division? I'm not sure that I can give Your Honor an answer that would be satisfying. That is how I understand Section T. It is not about physical barriers. Would you say that's what its text is? Okay, so maybe... Yeah, but if that... So maybe I might be, even if this question is requiring us to go beyond the four corners, I still would like to understand it. Yes. So, my understanding had been that part of the point of the contract was for the cattle to be able to access both areas freely, and maybe divided ownership would prevent that. But if you're saying you could even have physical barriers that wouldn't allow that, then what is the problem with the ownership, the separate ownership? Because you need to keep... So, from a policy perspective, you need to keep this amount of land. Like, this is the bare minimum amount of land to maintain a viable operation that is not a hobby farm. You cannot have more than a certain number of cattle on any particular... But there are rules about how much cattle can be on any particular person's property. You will overgraze or you will undergraze, right? And in order to maintain the grasslands, which is the purpose of the program, you need this much land to do that in a sustainable and healthy way. And it's impossible for two owners just to have an agreement that they're going to allow cattle to graze on both of their property? I hesitate to say that it's impossible, but because... I do want to back up and say that the service... There are 25,000 conservation easements, 750 of which are grassland easements. If the service cannot monitor at that kind of level, it would be unadministrable. It would be very difficult for the service to sort of like allow all of these... So another purpose might be that it's just administrable if you have one owner, and that might be a reason. That is one, but not the purpose of the program. It's not a driving reason why division, partition or subdivision is not allowed. It is an administrability point. These easements are monitored on an annual basis, and it makes ensuring that the grassland uses and related conservation values are preserved. I guess I have one more question about the fence. So you're saying a fence that is between parcels B and C and parcel A would not violate the contract? A fence or a house, it doesn't have to be... I guess my point is just... But a fence that bisected one of the parcels, that would be a violation, right? I would have to look at the rest of the terms. There is actually a fencing... I believe there is a fencing provision in the... Existing fences may be repaired or replaced. The new fences may be built on the property for purposes... My point is only the rest of their property is not encumbered, and we don't understand the easement in a way to encumber the other 120 acres on their property. I see that my time has expired, but I would like to... Okay, but so you're saying that the division, partition, and subdivision provision is only about ownership. So like it actually would not be implicated if you erected physical barriers that divided... That is my understanding. Even within the parcels themselves. That is my understanding. Again, because we don't want to encumber... What's the difference between division and partition, for example? Well, those terms are not formally defined in the lease, and I don't... I'm sorry, in the deed. Partition is about formal ownership structures, as I understand it. Like if you have a joint tenancy and you then give it to the individual owners, division is about dividing the property among owners, and subdivision would be further subdividing it. But that is my sort of... Unlike property, and again, just to judge Nathan... Well, I mean, you say it's unambiguous, so it shouldn't really be hard to say, right? I'm sorry, can you repeat that? You said it's unambiguous, so it shouldn't be hard. I believe it is unambiguous, yes, Your Honor. And the district court so found, and correctly so. I just... If I may make one other point, I did hear my friend on the other side say that if you do reverse, that you should reverse the entry of judgment on count seven. I just want to be very clear that we would strongly object to that. Not only is that argument waived on appeal in our view, there is absolutely no waiver of sovereign immunity for that count. Wait, sorry, there's a waiver... No waiver of sovereign immunity for... For count seven. For count seven. But there is for the other one. Because of the... The Quiet Title Act, yes. So count seven is a state quiet title claim, and we would strenuously object to reversal of the entry of judgment on that count. Okay, the state claim was dismissed upon a determination not to exercise supplemental jurisdiction. That state claim, yes. Okay, thank you very much, Ms. Milton. We'll hear back from Mr. Callahan on the vote. Thank you, Your Honors. Your Honors, the Article III, Section T, does not use the word ownership. As Sister Counsel mentioned, it regulates activities. Well, Section T doesn't say anything about activities either. It says division, partition, or subdivision of the property. And the suggestion was that those are terms that refer to ownership. They don't. The government drafted the easement. The clients were not represented. The map shows they tried to maintain separation between the parcels. Do you read the word property in Section T to mean parcel? Yes, the three easement areas that are described within the term property. So it should say the division, partition, or subdivision of the parcels is generally prohibited? Well, the property as defined is the three non-contiguous parcels. And we haven't drawn any lines in between the parcels. We haven't affected any boundaries of the grassland conservation purposes. Because the same section uses the word parcel in the final sentence. So you would think if you meant, if the meaning, if it meant to reflect parcels, it would have used parcels. Our position is that the government should have used the word ownership to make very clear what it's trying to accomplish. I would think your argument is not that the word property actually means parcels. It's that the word property refers to the whole property, but that the property is already divided into three parcels. You're not creating a division. You're just accepting divisions that already exist. Correct, Your Honor. So that seems textually defensible. But the premise that those are divisions that already exist, that's questionable, right? Because it's not like these parcels, it's not like the county clerk has recognized the parcels as separate properties. It's not like the parcels exist anywhere, but in the map that's attached to this contract, right? Well, there's... So why should we treat that as a division? Especially if we were to agree with the government that division and partition refer to ownership, then it's also not even a division in the relevant sense, right? The only thing that the government purchased were easement areas and these defined spaces. We have not divided them, subdivided them in any way. I missed the beginning of that sentence. The only thing the government purchased were the three non-contiguous easement areas. We have not divided those or subdivided those in any way. And there's no requirement of common ownership. In fact, the... So you agree that if you sold half of parcel B to one third party and the other half to another party, you'd violate the contract? Yes. No, if we divided them and we're... Well, I guess that's my question. So if you introduce a division within the parcel, you're saying that would be a violation of the contract? Yes, it would. And would separate ownership be such a division? If it's within the parcel and there's a distinct legal boundary between... Okay, so the introduction of a new legal boundary would be a division or a partition? Within the easement areas. Right, but not between them.  And why is that? That's because it's already divided that way. But it's not divided that way in terms of a legal boundary, right? It's like when they signed the easement contract, there is no legal boundary between parcels A and B and parcel A, right? And once you effectuate a sale, there is. Well, they didn't purchase any rights or restrictions in the areas in between the easements. So it doesn't prevent my clients from doing whatever they want in those areas. Okay. And just if I may, the defendant cited a case in its summary judgment briefs, USDA v. Engel, it's a 344 Michigan Appellate 213, where the easement in that case specifically contained express language prohibiting separate ownership, unlike the easement in our case. And I found it interesting that they did not choose to cite it again in their second circuit briefs. The only case that's been cited that interprets the language that's similar to the one in this easement is the one that we cited in our case, which was the bankruptcy decision that we believe is directly on point with this case. Okay, thank you very much. Thank you, Your Honor. Mr. Callaghan, the case is submitted.